Our fifth case for this morning is United States v. Cates, Ms. Christensen. Good morning, your honors. May it please the court, counsel. My name is Joanna Christensen and I represent the appellant, Marvin Cates. The district court erred in denying Mr. Cates' motion to withdraw his guilty plea, for he had an absolute right to do so under Rule 11d1. The standard of review here should be de novo for two reasons. One is that we argue in our brief that a different standard should apply to 11d1 denials, because the district court really does not have discretion to deny such a motion. And the other reason is de novo is because it's ultimately an ineffective assistance of counsel claim, which was made by Mr. Cates at the hearing on his motion to withdraw. Do we have any evidence here, other than Mr. Cates' word for it, that Mr. Vandercoy knew, prior to the time the district court accepted the plea, that Mr. Cates wished to withdraw it? It's solely Mr. Cates' testimony, and then of course the timing of the change of plea colloquy and the acceptance of the guilty plea by the district court. So Mr. Cates testifies that he both talked to him right after, shortly after the change of plea hearing, and then also describes receiving the letter from, I assume the district court, accepting the guilty plea, that's assumed in the record, shortly before he told his counsel. So it is based on Mr. Cates' testimony, but that would be the primary evidence in any event. But why isn't this, I mean, of a textbook example of why we need these things to be asked to provide an affidavit or have a deposition or anything of the sort, would be able to clarify, or at least we'd get his version of when Mr. Cates conveyed this request, or if Mr. Cates conveyed that request, and we actually also could learn something from Skadinski. It's a very thin record to assume that the district court made such an obvious mistake. I agree, Your Honor. It is a thin record. It is a situation where I made a judgment call about whether to raise it. Because it had been at least minimally preserved, and that was part of his exception to his appeal waiver, Mr. Cates and I made the decision to raise it on direct appeal. I think that the record could be fuller, and specifically if we were able to go back in time with Mr. Vander Kooi's testimony about when he logged a call from Mr. Cates, that would answer our questions for us. Unfortunately, when I look at whether to raise it or whether essentially file an Anders brief, that line is very narrow for me, and I made the decision based on the record as it is. And part of that is because Mr. Cates' testimony doesn't necessarily waiver at all, and there's no dispute as to his testimony. The government intimates that he might have been mistaken or lying, and there's certainly not a finding by the district court that that was the case at that hearing. Part of our difficulty also is the district court did not make findings on 11d1, but made findings on 11d2. The issue was never raised. It was not raised in writing. Our argument in the brief is that Mr. Cates raised it three separate times in response to questioning. But as the district judge is hearing arguments and evidence in this hearing, it's only under the just and fair standard, right? The motion was certainly . . . It's presented in only that way, right? That's all about . . . The timing, and he says, I'm not sure, I'm not sure. I think that he simply is saying he can't be sure which day. Well, that's one way to read it, but in terms . . . But to go back to Judge Wood's point, if this is not an absolute lay-down slam dunk, you lose at this stage. I think that's usually the case when I'm arguing, but . . . No, there's a big difference. You could . . . Not necessarily, but in this circumstance, if there is a viable claim, and I don't know if there is or not, but if there is, I frankly don't see it on this record. I see it as a possible claim, but you're presenting it in this context where you, in essence, heads, Kates wins, tails, he doesn't lose, he gets a remand for an evidentiary hearing, which says to me, this ought to be a 2255 claim. I don't think it's essentially a 50-50 argument, Your Honor, is that we can see it either way. When you look at the time period, Mr. Kates is certain that he told his attorney prior to getting the letter from the court accepting the guilty plea. So, what we have is 16 days prior to . . . I'm not sure when it was, answer, I'm not sure, I'm not sure. He says, right, I talked to him and told him, I changed my mind, I don't want a plea. During another portion of his testimony, he's certain that he told him prior to getting the letter. But the court's . . . but there's a window there after the court accepted and before notice is received to go back to some of our earlier debates this morning about mailboxes and so on. Yes, it seems to be kind of a theme this morning. But my argument essentially is that the window is bigger on Mr. Kates' favor, as it were, from the change of plea colloquy to the date that the plea was accepted. And that window is narrower, of course, in the three days between the acceptance and then when he receives the letter. Yeah, I understand the argument just fine. I just don't know, I think as Judge Hamilton said, I don't know how you can be definitive on this particular record. And it seems to me, and I'm not asking you to reveal any confidences of discussions with your client, but I mean it seems to me that you . . . it stood out on page 24 of your brief, you kind of shift into arguing it in the third person, that Mr. Kates feels strongly that the issue needs to be presented now. Mr. Kates this, Mr. Kates that. Well, I mean, I don't see how he can win on this record, and he has a chance, depending upon what the facts show, of winning in 2255. I will tell you, Your Honor, that I have discussed it, without discussing specifics, and we discussed it multiple times prior to . . . I could tell from the brief, and it's just, you know, if he, in fact, he directs the argument that way, he directs the argument, but . . . Right. And that was definitely his decision to go ahead at this point, and with the record that I currently have, there was enough to make an argument, and certainly not a lack of . . . a dearth of evidence that says that I have to file, you know, a frivolous . . . or an Anders brief . . . So . . . . . . frivolous. Do we . . . our usual practice in such cases has been, as I understand it, to give counsel an opportunity to raise the issue a final time. Is that necessary here? Like, now, or later? With the defendant, the appellant. Well, in other words, not to make you say, right this minute, but to give you, you know . . . An opportunity to consult with him. . . . a few days to consult with Mr. Cates one last time, and inform the court what the final decision is. That certainly is an option. I rarely raise ineffective assistance of counsel, so I've never been . . . I think out of the eighteen years, I've done it twice, maybe, including this case. That certainly would be an option. I suppose I could guess at what Mr. Cates . . . but given your comments here today, that might be helpful for him to understand. Of course, we do . . . part of our argument is the district court made the findings on the wrong issue, on the wrong standard. It should be D-1 rather than D-2, and that opens . . . He made the findings on the standard that was argued to him. Right. The evidence, however, did point in another direction. The court was part of that Yes, Your Honor, that would be a viable option in this case. I understand, certainly, the gravity of the waiver that would occur later on, and that's been explained to Mr. Cates, but I certainly could inform the court if the court wishes. Okay. Thank you. I'll reserve the rest of my time. You can reserve the rest of your time. That would be fine. Ms. Donnelly. Thank you. May it please the court? My name is Molly Donnelly on behalf of the United States. As this court has already recognized, there are several factual questions here that would have to be answered in order for the court to find that counsel was ineffective. But because we're dealing with an incomplete record, ambiguity leads to a presumption that counsel was effective and that the defendant cannot establish here that plain error occurred. Addressing the standards mentioned previously, this argument was not raised below, and, in fact, the motion to withdraw the guilty plea was filed after the court had accepted the plea. Is the problem that the only evidence comes from Mr. Cates, or is the problem that Mr. Cates himself, in the record, was not in a position to be specific about when he made the request? I think they are both problems, Your Honor. When we're looking at the record as it is and the lack of specificity that Mr. Cates provides to the court, based on what he said, based on his testimony even, there is a scenario in which counsel was effective. What Mr. Cates testified to at the hearing was not that in that window between the change of plea hearing in front of the magistrate judge and the acceptance of the guilty plea, I talked to my attorney. I told him I wanted to withdraw the plea, and he failed to do so. What he testified to is that he, at some point in time, received a letter. We don't know when he received that letter. We don't know where that letter came from or who it came from, but he received a letter. And he said, shortly before I received that letter, saying that the guilty plea had been accepted, that's when I talked to my attorney. So we're dealing with a situation here in which the guilty plea was accepted on October 3rd. Let's say whoever sent this record, wherever it came from, let's say it went out that day to Mr. Cates at the St. Joe County Jail. The following day on October 4th, Mr. Cates could have had this conversation with his attorney where he allegedly tells him that he wants to withdraw his guilty plea. Mr. Vander Kooi says it's too late, and then the following day or the day after that, October 5th or 6th, he receives a letter at the St. Joe County Jail saying that the guilty plea has been accepted. Well, in that scenario, Mr. Vander Kooi's advice was entirely accurate, and he provided effective assistance. Here where we're dealing with plain error, in that scenario where no error occurred, let alone a plain one, we haven't even yet gotten to the fact that Mr. Cates' testimony hasn't been subject to adversarial testing. He could have been mistaken. Mr. Vander Kooi hasn't had an opportunity to weigh in. And at a prior suppression hearing, the court had found Mr. Cates to be an incredible witness. Yeah, I mean this is actually all about, as I understand it, Mr. Cates' I mean it would have been his constitutional right if he hadn't pleaded guilty, but Mr. Cates' interest in pursuing the suppression issue, which of course he's already lost on. Yes, Your Honor, that's what came out during the motion to withdraw the guilty plea. During that hearing, as you can see from the transcript, it's only on four pages that the issue we're talking about today is even mentioned out of an almost 40-page long transcript. The focus there was that he didn't, he knowingly but didn't voluntarily enter into the plea because he did not, he essentially didn't have enough time from the time that the government offered the plea agreement and he accepted it to decide. Right, he says this is my life, you know, you've given me this very five days or whatever he said, and his contention on the district court level was that the motion to suppress issue was so important to him that he wanted to be able to preserve that and that's the issue that he changed his mind about. He wanted to go to trial so that he could preserve that motion to suppress issue and he came to that decision. And get rid of the appeal waiver, I guess that's what withdrawing the plea would have done. Correct, correct, Your Honor. So, yeah, because otherwise, the government indicates that if he had withdrawn the plea, it would have superseded and added in all sorts of other charges. That's correct, Your Honor. We're getting somewhat into the plea negotiations, but what happened from a timeline perspective is Mr. Cates was indicted on a single count of felon in possession of a firearm. While the case was pending, we received results from the laboratory that drugs found on his possession had tested positive. So that would have been the superseding element, would have been to add those drug charges because in his confession, he admitted to the gun, he admitted that he was coming from Chicago to South Bend to sell drugs, and based on his criminal history, he likely would have been classified as a career offender on the drug charges in addition to the fact that he was an armed career criminal on the gun charge. So Mr. Cates, from the perspective of the government, certainly did get some benefit of this plea deal. Yes, he waived his appellate rights, but he also was not facing charges where he would have been classified as a career offender. Based on the scenario that the government has laid out and based on the fact that we just don't have a record here that can answer the court's questions about what happened. If we can't answer the questions about what exactly happened, then we can't say definitively at this point that Mr. Vander Kooi was ineffective or that Mr. Skidinski was. This is not one of the rare exceptions where this court has the evidence before it on direct appeal to find that counsel was ineffective. Because of that ambiguity in the record, it appears at this point at least that Mr. Cates wishes to proceed on the merits. That's his choice. The court in prior cases has followed the practice of, in the Flores case, counsel was asked at oral argument and confirmed that Mr. Flores, in fact, wanted to pursue the ineffective assistance argument on a direct appeal. In Harris, the court asked, as was indicated previously for a submission following oral arguments, confirming the defendant's request. Here, at least today, Mr. Cates appears to find himself in the same situation as Mr. Flores and Mr. Harris in that he knows the risks of going forward and he wants to do so anyway. At this point, his prior testimony is consistent with effective assistance, and because he cannot establish that plain error occurred, the government would be requesting that the judgment of the district court be affirmed. All right, thank you. Thank you, Your Honor. Anything further, Ms. Christensen? As I was looking for before, it's during direct testimony questioning that Mr. Cates said, after I took the plea, I contacted defense counsel. He's sure about that, and then when subject to cross-examination, he states, I know it was before I got the letter. Again, that's still with the window. I dispute the government's argument that this had not been subject to adversarial testing. They cross-examined Mr. Cates quite thoroughly about this issue and others. It was clearly raised during the testimony, and although it was not raised in writing and not argued substantially, there was enough there for the district court to ask questions about the timeline and try and get the timeline straight, for the district court should have made a ruling on perhaps both D1 and D2. Unless there are any other further questions, I'll await the court's order on further action from me and Mr. Cates and respond accordingly. All right, thank you. Thank you very much. We appreciate your help. Thanks as well to the government. We'll take the case under advisement.